FRANCIS A. JONES, plaintiff in error, *vs.* GROOVER, STUBBS & COMPANY *et al.*, defendants in error.

1. Where a mortgage and notes secured by it are placed in the hands of an attorney for foreclosure and suit, one of the conditions of which mortgage is, that the mortgagor shall pay all expenses of foreclosure, including attorney's fees, and the attorney takes the rule *nisi*, calling on the defendant to show cause why the mortgage should not be foreclosed for the amount due, and ten per cent. thereon as attorney's fees, and the attorney also commences a common law suit and gives written notice to the defendant not to settle or compromise with plaintiffs, except through the attorney ; notwithstanding which the defendant does compromise the case with the plaintiffs, without the knowledge of the attorney, the latter is entitled to a rule absolute to the extent of his fees, in the absence of any cause shown to the contrary.

2. The absence of defendant's counsel, by leave of Court, on the day the rule absolute was taken, but who had left with plaintiff's counsel a written consent that the rule might be taken unless, before a certain day named, which had passed, a satisfactory settlement was had, is no ground for enjoining the levy of the execution issued upon the rule, especially where such injunction is not asked until after the return term of the execution has passed, and there is no allegation of the insolvency of the plaintiffs or their attorney, or of any good defense which could have been made to the rule.

Refusal of injunction.   Attorney's fees.   Leave of absence. Before Judge GIBSON.   Burke county.   At Chambers.   July 15th, 1872.

Francis A. Jones filed his bill against Groover, Stubbs & Company and John L. Smith, sheriff of Burke county, making the following case :

On April 19th, 1870, Jones gave to Groover, Stubbs & Company his note for $7,500, secured by mortgage upon certain real estate in the counties of Burke and Emanuel, due November 20th next thereafter.   The mortgage contained a provision for the payment of all attorney's fees by the mortgagor in case default was made in the settlement of the amount due on the same at the maturity of the note.   Groover, Stubbs & Company proceeded to foreclose the mortgage at the May Term of Burke Superior Court, 1871.   Pending

the rule *nisi*, Jones called on Groover, Stubbs & Company and complained of this proceding, and they proposed to withdraw the proceedings if he would pay them, by the ...... day of ......, 1871, the sum of $......... This Jones refused to do, unless he should be relieved from attorney's fees; they replied, " Well, pay the amount suggested and that shall be all right," or words to this effect, and accordingly, in the fall, a short time before Burke Court convened, he paid said sum at the time agreed on. On Monday, the first day of Court, Frank H. Miller, Esq., being aware of the settlement of the case, and also of the absence of Stephen A. Corker, Esq., counsel for Jones, by leave of the Court, entered a rule absolute against him for the amount of his and Thomas E. Loyd's fees as counsel for Groover, Stubbs & Company, to-wit: the sum of $813 43, being ten per cent. on the amount alleged to be due on the mortgage. The execution is proceeding against the property of complainant. The bill prays that the rule absolute may be set aside and said Groover, Stubbs & Company be required to pay said attorney's fees, or, in default of this, that a new trial may be awarded to complainant, with the privilege to insist on all his legitimate defenses as though the case were for the first time on trial; that, in the meantime, said execution be enjoined.

To the bill was annexed a statement, as an exhibit, by which it appears that complainant was still indebted to Groover, Stubbs & Company in the sum of $2,863, after allowing the aforesaid credit. The bill was presented to Judge Gibson on May 19th, 1872.

The answer of Groover, Stubbs & Company showed that they only agreed to withdraw the proceedings of foreclosure on the mortgage upon the payment of $7,975 91, and all expenses and counsel fees which had accrued. They expressly deny that they ever contracted to pay said fees.

The affidavit of Frank H. Miller, Esq., which, together with other affidavits, unnecessary to an understanding of the decision of the Court, were read on the hearing of the application for injunction, was as follows, to-wit:

"Personally appeared Frank H. Miller, who being duly sworn, says, that in the month of May, 1871, he was employed by Thomas E. Loyd, Esq., to take charge of the collection of certain claims of Groover, Stubbs & Company, one of which consisted of a note of Francis A. Jones for $7,500, dated April 19th, 1870, and secured by mortgage of that date on lands of F. A. Jones, in Burke and Emanuel counties. That the original petition for foreclosure in Burke, and rule *nisi*, was prepared by T. E. Loyd and forwarded to Burke Court. It was duly taken at May Term, 1871, wherein defendant was called upon to show cause why he should not pay the debt, with counsel fees of ten per cent. thereon. This was served personally, as appears by the service, July 18th, 1871, on F. A. Jones. The original mortgage and note were not received by deponent from Mr. Loyd until August 20th, 1871. After this, deponent prepared a writ against defendant at common law, to November Term, 1871, and sent the same to S. A. Corker, Esq., who, deponent was informed, was one of Jones' attorneys. On this writ appeared the following written notice :

"'Notice is hereby given to the defendant not to compromise or settle this action against him except through the undersigned, as no other settlement will release him from liability for the attorney's fees of plaintiff.

"'FRANK H. MILLER, plaintiff's attorney.'"

This writ was returned to deponent by S. A. Corker, Esq., with the acknowledgment of Jones in person thereon, as of October 17th, 1871. Subsequently, deponent had taken, at October Term, 1871, a rule *nisi* to foreclose in Emanuel county. On Monday, November 21st, 1871, the first day of November Term, 1871, of Burke Superior Court, deponent ascertained from the Clerk that no cause had been shown by defendant to the rule *nisi*, nor had he paid any money, when he called. on S. A. Corker, Esq., to know if his client would pay, or if a rule absolute should be taken. He, Corker, stated that he was informed the matter had been settled, but

could not state how.  Deponent thereupon called Mr. Corker's attention to the fact that his client had been notified not to settle except through him, deponent.  Deponent immediately wrote to T. E. Loyd for information, and remained at Burke Superior Court that day and the next, when, not hearing, and desiring not to fail to obtain judgment at that term, and wishing to ascertain the truth of the statement as to any settlement, he took from Corker & Dickson, defendant's attorneys, a statement in writing as follows:

" Groover, Stubbs & Company vs. Francis A. Jones. ˛
"*Petition and rule nisi to foreclose.*

" It is hereby agreed, on the part of defendant's attorneys, that the rule absolute shall be entered on the minutes of the Court on Friday, the 25th November, 1871, unless before that time a satisfactory settlement is had, and that if, from any cause, Court should finally adjourn before said day, and no settlement be had, the same shall be entered on the minutes of the Court, and execution issue as of this date, November 21st, 1871.                    F. A. JONES,
            " By Corker & Dickson, his attorneys."

On Friday, 24th, and Saturday, 25th of November, 1871, deponent was at Burke Court, but not having heard anything, he waited longer at Mr. Corker's request. On Sunday, 26th, he received a letter from T. E. Loyd, per J. R. Saussy, dated the 22d, which had been forwarded from Waynesboro, stating that Groover, Stubbs & Company had requested him yesterday to have the cases against Jones stopped for the present, but did not say what arrangement they had made, and directed the proceedings to be continued, and send deponent's bill, which he would present for payment and send as soon as collected.  Deponent forwarded his bill November 27th, 1871, but received no reply ; whereupon he wrote J. R. Saussy, who had been acting for Mr. Loyd to find out the terms of settlement.  Not hearing from either, deponent wrote to S. A. Corker December 26th, 1871, for the same

information, and received his reply, dated December 30th, 1871, that he saw Mr. Jones in reference to deponent's fee, and he said there was a small balance due to Groover; that he would arrange with them the matter before final settlement. Subsequently, early in January, deponent met Mr. Corker and asked him the terms of settlement, when he replied he did not know. Deponent went to Savannah January 29th, 1872, and found Mr. Loyd ill. Deponent then called in person on Groover, Stubbs & Company to ascertain the terms of settlement and to see if they would pay his fee, but they referred him to Mr. Loyd without giving any explanation. The next day deponent saw Mr. Loyd by appointment with him, and Groover, Stubbs & Company, but Groover, Stubbs and Company did not keep their appointment, nor would go to see Mr. Loyd when sent for. While in Savannah deponent ascertained the counsel fees in all cases to be ten per cent. on the amount as claimed in the rule *nisi.*

At the Adjourned Term of Burke Superior Court on February 5th, 1872, deponent moved for judgment for counsel fees on the amount due. After making most diligent efforts, he had not then obtained information of the terms of settlement or of any settlement had, and believing that there was collusion to prevent the payment of counsel fees, he pressed the motion. S. A. Corker was not present on that day, but the motion was resisted strenuously by J. S. Hook, Esq., counsel for F. A. Jones, and Mr. Dickson, of Corker & Dickson. No plea had been filed, or cause shown, and upon the production of the mortgage and the written consent of Corker & Dickson, with the rule *nisi* requiring cause to be shown as to attorney's fees, the Court granted the rule absolute. On the evening of the same day deponent met S. A. Corker, Esq., in Augusta, and informed him of what had been done in this and other cases against Jones. Deponent heard no objection at the time, or at any time, from Mr. Corker as to his right to proceed as has been done, until the filing of the bill for injunction. On the 8th of February, 1872, de-

ponent received a letter from Corker about other cases against F. A. Jones, but no reference to this was had, and no motion was made in the case before adjournment, although the Court lasted nearly all the week.

After this Term, to-wit: February 23d, 1872, Francis A. Jones called on deponent and stated that Groover, Stubbs & Company agreed with him to pay the fees when he settled with them; that there was a balance due, and he was going to Savannah at once to have both matters settled; but it was not until March 16th, 1872, that deponent learned positively what F. A. Jones had paid Groover, Stubbs & Company, and what was still due them. This information was received upon an investigation before auditors of the affairs of F. A. Jones, executor of M. D. Jones. Deponent then learned that on November 20th, 1871, the first day of Court, $7,975 91 was paid, and there was still due $2,863 on this mortgage. It is to be borne in mind that during the whole of these proceedings there was pending a petition, and rule *nisi* and suit at common law against Jones, as executor of M. D. Jones, on a note for $7,500 not yet disposed of, but which F. A. Jones had assumed individually, and was included in his settlement of November 20th, 1871, with Groover, Stubbs & Company. On the 19th of February, 1872, deponent ordered execution to issue, with instructions to the sheriff to levy the *fi. fa.* at once, which the Clerk informed deponent under date of March 6th, 1872, he had done. No advertisements have been made of any levy to deponent's knowledge. Deponent swears that Groover, Stubbs & Company are, to the best of his knowledge and belief, entirely solvent, and that Thomas E. Loyd and himself are also.        (Signed)

FRANK H. MILLER."

" Sworn to and subscribed before me,
     June 10th, 1872.
(Signed)        WILLIAM GIBSON, J. S. C."

The injunction was refused on July 15th, 1872, and complainant excepted, and assigns said ruling as error.

HOOK & GARDNER, for plaintiff in error.

Thomas E. Loyd; Frank H. Miller, for defendants. 1. The Court below had no jurisdiction : 40 Ga., 228 ; Code, sec. 4124. 2. The bill was filed too late to enjoin *fi. fa. :* 1 Equity Rule ; 37 Ga., 583. 3. It contained no sufficient allegations of any defense existing at the time of judgment, of any injury received from his counsel's absence, or that he has now any defense : Bell *vs.* Marietta P. M. Co., decided February 13, 1872. 4. Misunderstanding between client and attorney as to defense, no ground to set aside judgment : 40 Ga., 506. 5. When notice is given not to settle, defendant is bound for fees due from plaintiff's attorney : Code, sec. 1980 ; 39 Ga., 5. And certainly when called upon to show cause why he should not pay, as agreed under the mortgage. 6. The facts show such conduct on the part of F. A. Jones and Groover, Stubbs & Company, as amount to legal fraud, to defeat or postpone the rights of the attorneys to their fees, which is not allowed : 39 Ga., 7. 7. An attorney is not required to prove his claim for fees, except in cases of *tort,* when there is no evidence of the existence of any reasonable cause of action : 36 Ga., 629. 8. No error to refuse injunction on such grounds as constitute no defense to the action : 30 Ga., 664. 9. When a party has his day in Court, equity cannot relieve, even if judgment is wrong : 32 Ga., 362 ; 16 Ga., 398 ; Code, sec. 2621. 10. To have allowed such writ would relieve the sheriff, who is already liable : 26 Ga., 437 ; 11 Ga., 297 ; Kimbro *vs.* Edmondson, decided September 17th, 1872. 11. Insolvency of Groover, Stubbs & Company, or their attorneys, must be alleged in any case to restrain an execution : 15 Ga., 533 ; 26 Ga., 485. But cannot be when, by complainant's own showing, a large balance is still due by him to Groover, Stubbs & Company, unpaid, which he does not and has not tendered : 42 Ga., 412. 12. It is true that leave of absence dispenses with the discharge of professional duties : 25 Ga., 158 ; 36 Ga., 54. But only with reference to matters arising during the time of the leave, and which relate to cases where a meritorious defense has been

Jones *vs.* Groover, Stubbs & Company *et al.*

filed : Bell *vs.* Marietta P. M. Co., decided February 13th, 1872; 43 Ga., 376; Smith *vs.* Brand, decided February 20, 1872; Rust, Johnson & Co. *vs.* Ketchum & Hartridge, decided July 16, 1872.

MONTGOMERY, Judge.

Section 1980 of the Code provides that "parties cannot, by settlement between themselves, defeat the attorney of any lien or claim under contract with his client of which the opposite party had notice prior to the consummation of such settlement." Judge McCAY, in *Hawkins vs. Loyless*, 39 *Georgia*, 5, seems to think the lien must be created by contract and that the section does not apply to liens arising by operation of law. With due deference to the opinion of my associate and that of Judge Walker, in *Grey vs. Lawson*, 36 *Georgia*, 630, it strikes me that the section applies to *all* liens which attorneys may have, whether created by contract or arising by operation of law. Attorneys seldom or never take liens from their clients by contract; but are content to rely on the lien given them by operation of law. They often make contracts with their clients, out of which their claim for remuneration arises, or rather, to speak more accurately, by which their claim for remuneration is measured. Hence I think it is the claim alone which is to be under contract. The view here presented seems to be sustained by the section immediately preceding (section 1979,) which says attorney's liens, without saying how created, shall attach upon all property recovered by them, and be superior to all other liens. Section 1980, is but a continuation of the same subject. True, there is no comma after the word lien ; but how many of our laws will bear the test of rigid rules of punctuation ?

Be this as it may, the attorney in this case had "a claim under contract with his client" for the payment of such fees as his services were reasonably worth, and the complainant had notice not to settle with the mortgagee except through the attorney, and had agreed in the mortgage to pay the attorney's fees ; and the rule *nisi* had called upon him to show

cause why he should not do so. Judge Walker, *arguendo*, in *Grey vs. Lawson*, 36 *Georgia*, 630, says, in an action of tort the attorney must have a "lien or claim by special contract" of which the defendant must be notified before settlement to bind him. What is meant by "special contract" is not very clear. If he means an express contract for a definite fee, that queston is not made by the case. The questions there decided are that an attorney must give notice of his intention to look to the defendant for his fee before settlement of the case by the defendant with the plaintiff, and the mere fact of his appearance is not such notice; and in an action of *tort*, even if he give such notice, he cannot hold the defendant liable for his fee, until he show that the defendant was liable to the plaintiff in damages for as great an amount as the fee claimed, for "it may appear on the trial that the plaintiff had no sufficient cause of action; or, if his action be maintainable, he may be entitled to mere nominal damages, much less than the claim of the attorney for his services; in either event the defendant should not be made to pay for the benefit of the attorney more than the plaintiff had a right originally to recover," and therefore the case ought to go to a jury to determine the liability of the defendant to the plaintiff before the Court can know whether he is bound to pay the attorney anything. In that case the defendant availed himself of his defenses before the Court below granted the judgment in favor of the attorney, from which the defendant promptly appealed and the judgment was reversed. That case differs from the case at bar in several particulars; that was a suit for a *tort*, in which a jury alone could determine how much, if anything, was due by the defendant; this was a rule to foreclose a mortgage in which a jury is never necessary, unless the defendant sets up some defense. In that case, no notice was given by the attorney to the defendant; in this, the notice was given. In that, the defendant contested the attorney's right to take judgment against him *ab initio;* in this, judgment was permitted to go by default. Indeed, it was more than a judgment by default; the rule

absolute was taken under the written consent of the defendant's counsel, that in the event of a failure to make a satisfactory settlement by a given time, which had passed without such settlement, the rule might be made absolute. Nor was it necessary to show the amount due on the mortgage. If the amount of the mortgage was not due at the time it was placed in the hands of the attorney, the complainant should have appeared, as the law provides, and shown it. But neither that was done, nor was any other cause shown in answer to the rule *nisi*, why the rule should not be made absolute. Under this state of facts, we think the attorney was entitled to his rule absolute for the amount of his fees.

2. Although the complainant's counsel was absent at the time the rule was made absolute, yet he had left his written consent that the rule should be taken. Why, then, should the plaintiff in the rule be delayed? Had counsel intended to withdraw from his consent to let the rule be taken, he ought to have given notice of such intention. That there was, or may have been, a misunderstanding between himself and his client, is no reason why the judgment should be set aside: *Kite vs. Lumpkin*, 40 *Georgia*, 506. His client should have informed him of any defense, if he had any. He not only failed to do so, but his bill fails to show any defense he could have made to the rule had he been present. He had written notice not to settle except through the attorney; he had agreed, in the mortgage, to pay the necessary fees, and the rule *nisi* called on him to show cause why he should not pay the ten per cent. on the amount of the mortgage as attorney's fees; yet, he not only failed to make any defense, but, through his counsel, gave written consent that the rule should be taken. Whatever defense he had should have been made in answer to the rule *nisi*. He shows no sufficient reason why it was not done. "The well settled rule is, that the judgment concludes all disputes between the parties, unless there be fraud, accident or mistake, unmixed with any negligence of the party complaining:" 40 *Georgia*, 509. Here was negligence in not answering the rule, if the defendant

had any available defense.  If he had not, he is not hurt. The complainant not only failed to answer the rule *nisi*, but he has delayed to file his bill for an unreasonable time, and has not alleged any damage which he may suffer, if the Court fail to interfere, or that the defendants are insolvent and unable to respond if he does.  If Groover, Stubbs & Company promised to relieve him from the payment of counsel fees, as alleged in the bill, he has his recourse upon them.  But that is no reason why the attorneys should be delayed in the payment of their claims.

Judgment affirmed.